UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
DANIEL LOVELL, individually and on )
behalf of a class of those similarly situated, )   No. C14-1152RSL
                                                              Plaintiff, )
          v. )   ORDER GRANTING MOTION
P.F. CHANG'S CHINA BISTRO, INC., )   TO DISMISS
                                                              Defendant. )
_____)

This matter comes before the Court on "Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim." Dkt. # 11. Plaintiff alleges that defendant P.F. Chang's China Bistro failed to prevent a significant data breach that compromised its customers' personal financial data and caused them harm. Plaintiff filed this action on July 30, 2014. He asserts claims of negligence, breach of implied contract, breach of fiduciary duty, strict liability, negligent misrepresentation, and violations of the Arizona Deceptive Trace Practices Act. Defendant seeks dismissal of all of the claims on various grounds.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory

ORDER GRANTING MOTION TO DISMISS

> allegations or the formulaic recitation of elements of a cause of action, and must
> rise above the mere conceivability or possibility of unlawful conduct that entitles
> the pleader to relief. Factual allegations must be enough to raise a right to relief
> above the speculative level. Where a complaint pleads facts that are merely
> consistent with a defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief. Nor is it enough that the complaint is
> factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

Plaintiff alleges that P.F. Chang's failed to utilize industry-standard cybersecurity practices, that hackers were able to access credit and debit card date from customers who frequented defendant's restaurants between September 18, 2013, and June 11, 2014, and that his credit card information was stolen as a result of the security breach.[1] Plaintiff alleges that he was harmed in three ways. First, plaintiff argues that he paid too much for P.F. Chang's food

---

[1] In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Although Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) (United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)), defendant's updated website and the contradictory factual assertions contained therein do not fall within any of these categories. The Court declines to convert defendant's motion into a motion for summary judgment and has therefore not considered defendant's assertion that the security breach did not involve credit or debit cards from the restaurant at which plaintiff ate.

ORDER GRANTING MOTION TO DISMISS          -2-

and services on the theory that, had defendant disclosed the shortcomings in its security systems, plaintiff "would have paid less for [his] meals or not purchased them at all." Complaint (Dkt. # 1) at ¶ 23. Second, plaintiff alleges that now that "cyber-criminals" possess his personal financial information, he must take steps to protect himself from unauthorized charges, including replacing his existing credit cards and joining credit fraud watch lists, and that these steps are "long, costly, and frustrating." Complaint (Dkt. # 1) at ¶ 24. Third, plaintiff alleges that he may be subjected to harassment or stalking as a result of the security breach. Id.

## DISCUSSION

**A.  Negligence**

The elements of a negligence claim under Washington law are duty, breach, injury, and proximate causation. Lowman v. Wilbur, 178 Wn.2d 165, 169 (2013). Defendant argues that plaintiff's allegations of injury are conclusory and legally insufficient. In the Complaint, plaintiff alleges that, as a result of the security breach, he paid too much for P.F. Chang's food and services, he must take steps to protect himself from unauthorized charges, and he may be the victim of harassment or stalking. Complaint (Dkt. # 1) at ¶¶ 23-24.[2] Plaintiff does not, however, address the first type of alleged injury in his opposition to defendant's motion for judgment on the negligence claim, instead focusing solely on whether "monitoring costs and a significant risk of future injury are cognizable as damages" under Washington law. Dkt. # 16 at 24-25. Because plaintiff makes no effort to explain how defendant's alleged negligence diminished the value of the food he ate at P.F. Chang's or caused him to frequent the restaurant when he otherwise would not have, he cannot recover on his overpayment theory.

---

[2] Plaintiff alleges that the failure to safeguard his financial data caused these three types of harm in the "Substantive Allegations" section of the Complaint. He need not repeat the allegations in the context of each and every enumerated claim where the context makes clear the nature of the alleged injuries.

ORDER GRANTING MOTION TO DISMISS        -3-

To the extent plaintiff seeks damages on the ground that the stolen financial data might be used to harass or stalk him, "[t]he mere danger of future harm, unaccompanied by present damage, will not support a negligence action." Gazija v. Nicholas Jerns Co., 86 Wn.2d 215, 219 (1975); Krottner v. Starbucks Corp., 406 Fed. App'x 129, 131 (9th Cir. 2010). Although Washington recognizes a claim for damages related to "anxiety, arising from a current reasonable fear of future injury or illness, and resulting from an injury caused by the defendant" (Sorenson v. Raymark Indus., Inc., 51 Wn. App. 954, 958 (1988)), plaintiff has neither alleged that he is anxious nor provided facts from which one could plausibly infer that he has a reasonable fear of future harassment or stalking. The Court will not presume anxiety in these circumstances. Millions of people have had their credit and/or debit information stolen from retailers in the past year, yet plaintiff provides no examples of harassment or stalking related to those thefts. Anxiety is compensable only if plaintiff were able to show "with reasonable probability that he will actually" suffer the feared harm. Koker v. Armstrong Cork, Inc., 60 Wn. App. 466, 482 (1991). In the absence of any facts giving rise to a plausible inference that plaintiff has or will probably suffer harassment and/or stalking as a result of the loss of his financial data, plaintiff may not recover on the ground that he fears that he will be harassed or stalked in the future.

The nature of plaintiff's claim for credit monitoring services is unclear. Assuming, for purposes of this analysis, that the circumstances would justify monitoring expenditures, plaintiff does not allege that he has paid for such services or otherwise incurred any monetary losses that were causally related to defendant's alleged negligence. Rather, plaintiff alleges (a) that he "must add [himself] to credit fraud watch lists" which may impair his ability to obtain additional credit and (b) he will have to undertake the "long, costly, and frustrating" chore of ensuring that his credit card company holds him harmless if unauthorized charges are ever made to his account. There is no indication that plaintiff has, as yet, suffered any appreciable harm as a consequence of the alleged negligence. Gazija, 86 Wn.2d at 219. To the extent he is alleging

ORDER GRANTING MOTION TO DISMISS      -4-

1 that he fears that unauthorized charges will be made to his account or that his credit will be
2 harmed in some way as a result of the security breach, he has not alleged facts from which one
3 could infer "with reasonable probability that he will actually" suffer those injuries. Koker, 60
4 Wn. App. at 482.  As was the case in Koker, plaintiff retains the opportunity to seek damages for
5 a future harm if and when it befalls him:  the fear that something might happen in the future is
6 simply too speculative an injury to give rise to a present cause of action.  On the facts alleged,
7 plaintiff's negligence claim fails as a matter of law.[3]

**B. Breach of Implied Contract**

9       Plaintiff alleges that, when he paid for his meal with a credit or debit card, the
10 parties entered into an implied contract whereby defendant "agreed to safeguard and protect" his
11 financial information.  Complaint (Dkt. # 1) at ¶ 42.  In his opposition to the motion for
12 summary judgment, plaintiff argues that defendant impliedly promised "to monitor audit logs on
13 a daily basis."  Dkt. # 16 at 24.  Defendant seeks dismissal of this claim on the ground that,
14 where an express contract governs the relationship of the parties, plaintiff cannot assert a breach
15 of implied contract claim.  Defendant does not, however, make any effort to establish the
16 existence or terms of an express contract with plaintiff.  Defendant also argues that, if there were
17 an implied contract between the parties, its terms involved only the provision of and payment for
18 food, not a promise to safeguard the customer's credit or debit card information.  The Court
19 agrees.

---

[3] The plaintiffs in In re Target Corp. Customer Data Security Breach Litig., __ F. Supp.3d __, 2014 WL 7192479, at *2 (D. Minn. Dec. 18, 2014), alleged that they had suffered "unlawful charges, restricted or blocked access to bank accounts, inability to pay other bills, and late payment charges or new card fees."  If plaintiff were able to allege that unauthorized and unreimbursed charges have been made to his account or that he suffered some other cognizable injury as a result of the security breach, he may be able to assert a negligence claim under Washington law.  Leave to amend the complaint will therefore be granted.

ORDER GRANTING MOTION TO DISMISS         -5-

Under Washington law:

> A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances, and not from their words either spoken or written. Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds. Such a contract differs from an express contract only in the mode of proof. The burden of proving an express or implied contract is on the party asserting it, and he must prove each fact essential thereto, including the existence of a mutual intention.

Kellogg v. Gleeson, 27 Wn.2d 501, 505 (1947) (internal quotation marks and citations omitted). For purposes of this discussion, the Court assumes that an implied contract for the provision of and payment for food existed between the parties: plaintiff requested a meal, defendant provided and expected payment for the meal, and plaintiff knew or should have known that defendant expected payment. Young v. Young, 164 Wn.2d 477, 486 (2008). The acts and conduct of the parties arose in circumstances that showed a mutual intent to exchange services for payment, which gave rise to a contract. Johnson v. Nasi, 50 Wn.2d 87, 91 (1957).

The scope and terms of that contract were limited, however, and there is no indication that it included the alleged promise to safeguard plaintiff's financial data and/or to monitor audit logs on a daily basis. Plaintiff provides no evidence from which one could plausibly infer that defendant intended to contractually bind itself to a general standard of reasonable care or any particular cybersecurity standard or protocol by accepting payment via a credit or debit card. At the point in the transaction where the card was offered, plaintiff owed funds pursuant to the implied contract for food and unilaterally chose to make payment by credit card. Defendant, to which the funds were owed, agreed to accept this form of tender in satisfaction of the debt. Plaintiff alleges no facts suggesting that he requested or that defendant made additional promises regarding loss prevention, and neither the circumstances nor common understanding give rise to an inference that the parties mutually intended to bind defendant to

ORDER GRANTING MOTION TO DISMISS           -6-

specific cybersecurity obligations.[4] To the extent plaintiff expected defendant to utilize the Payment Card Industry Data Security Standard or to check its audit logs on a daily basis, such unilateral and subjective expectations do not give rise to enforceable contracts. See Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 224 (1984) (employee's "subjective understanding that he would be discharged only for cause . . . is insufficient to establish an implied contract to that effect"). To the extent plaintiff's claim is based on an alleged failure to exercise reasonable care untethered to any express or implied contractual obligation, the claim does not arise in contract.

**C. Breach of Fiduciary Duty**

Plaintiff alleges that defendant owed him a fiduciary duty when it requested and accepted plaintiff's confidential financial information as payment. As an initial matter, the allegations of the complaint do not give rise to a plausible inference that P.F. Chang's requested that plaintiff make payment via a credit or debit card. The only reasonable inference based on the allegations of the complaint is that plaintiff unilaterally decided whether to pay with cash, check, or card based entirely on his own conveniences and interests.

More importantly, plaintiff cannot establish the existence of a fiduciary relationship between the parties in these circumstances. A fiduciary relationship can arise as a matter of law when the nature of the relationship (*i.e.*, trustee and beneficiary, principal and agent, physician and patient, husband and wife) is such that the fiduciary has a duty, compelled by his undertaking, to act primarily for the benefit of another in all matters related to the undertaking. Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wn.2d 784, 797-98 (2001). The relationship between restauranteur and patron is not of a fiduciary nature. Fiduciary obligations may also arise as a matter of fact where "something in the particular circumstances . . .

---

[4] The Court does not doubt that the offer and acceptance of a credit card as payment of a consumer debt necessarily involves certain implied promises, such as that the card is not fraudulent and that the vendor will utilize the card only for payment of the debt owed. Such promises arise out of the acts of the parties when viewed in light of the surrounding circumstances and the common understanding of the transaction.

ORDER GRANTING MOTION TO DISMISS        -7-

approximates a business agency, a professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise." Alexander v. Sanford, 181 Wn. App. 135, 172-73 (2014) (quoting Hood v. Cline, 35 Wn.2d 192, 200 (1949)). See also Pope v. Univ. of Wash., 121 Wn.2d 479, 492 (1993) (a fiduciary relationship may arise between contracting parties "where one party has superior knowledge and thereby induces reliance in the other party").

Plaintiff alleges that defendant had superior knowledge of its cybersecurity practices and that plaintiff was induced to share his confidential financial information in reliance on that superior knowledge. While this argument uses all of the right words, the facts of this case are not similar to those in which a fiduciary relationship was found to exist under Washington law. In cases such as Liebergesell v. Evans, 93 Wn.2d 881 (1980), Salter v. Heiser, 36 Wn.2d 536 (1950), and Gray v. Reeves, 69 Wash. 374 (1912), for example, the defendants affirmatively encouraged plaintiffs to trust them to act in plaintiff's best interests or misrepresented facts that were within defendants' areas of expertise in order to induce reliance. Here, the parties had only the most fleeting contact with each other, there is no indication that P.F. Chang's made any representations regarding its security protocols, and nothing P.F. Chang's did or said induced plaintiff to disclose his credit card information. Plaintiff unilaterally decided to pay for his meals using a card. Having virtually no information regarding P.F. Chang's cybersecurity protocols, this decision was based on plaintiff's knowledge of his own circumstances and preferences, including his cash on hand, his current account balances, the terms of his credit card service agreement, and any points or benefits available through use of the card. While P.F. Chang's was undoubtedly more familiar with its own cybersecurity practices than was plaintiff, it did not misrepresent those practices or otherwise use its superior knowledge to induce the disclosure of plaintiff's financial information. The only plausible inference from the allegations of the complaint is that plaintiff simply trusted defendant – and apparently all vendors to whom he discloses his credit or debit card information – to act in his

ORDER GRANTING MOTION TO DISMISS        -8-

best interests with regards to that information.  To establish a fiduciary relationship, however, "there must be something more than mere friendly relations or confidence in another's honesty and integrity."  Collins v. Nelson, 193 Wash. 334, 345 (1938).  There being nothing about the relationship between P.F. Chang's and plaintiff that impelled, induced, or warranted the relaxation of the care one would normally take for his or her own interests in a commercial setting, there was no fiduciary relationship.

**D.  Strict Liability**

Plaintiff alleges that modern consumers are forced to rely on credit cards for many purchases, that they have no control over how the confidential information is safeguarded, and that vendors "are best able to distribute the costs of maintaining the security of the data and the consequences of the breach of such security."  Complaint (Dkt. # 1) at ¶¶ 54-56.  Plaintiff then concludes that P.F. Chang's should be held strictly liable for the loss of his financial information.

In the civil context, there are two types of activities that trigger strict liability in Washington.  The first involves "an abnormally dangerous activity" that causes harm:  the actor will be liable for injuries resulting from the activity even if he has exercised the utmost care in the performance.  Klein v. Pyrodyne Corp., 117 Wn.2d 1, 6 (1991); Restatement (Second) of Torts § 519(1).  The Court considers six factors when determining whether an admittedly dangerous activity is "abnormally dangerous," with the goal of determining whether the dangers and inappropriateness of the activity in the given locality "are so great that, despite any usefulness it may have for the community, [the actor] should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence."  Hurley v. Port Blakely Tree Farms L.P., 182 Wn. App. 753, 332 P.3d 469, 474-77 (2014) (quoting Restatement (Second) of Torts § 520, cmt. f).  Plaintiff does not argue that accepting credit cards or storing financial information is an abnormally dangerous activity.  The first type of strict liability does not, therefore, apply.

ORDER GRANTING MOTION TO DISMISS          -9-

The manufacture, distribution, or sale of unreasonably dangerous products may also give rise to strict liability under the rule embodied in Restatement (Second) of Torts § 402A. See Lunsford v. Saberhagen Holdings, Inc., 166 Wn.2d 264, 284 (2009). The theory underlying this type of strict liability is that the manufacturer, seller, and/or distributor "is in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against which liability insurance can be obtained." Simonetta v. Viad Corp., 165 Wn.2d 341, 354 (2008). The Court has not found, and plaintiff has not identified, any case in which § 402A liability has been imposed outside the product liability context. The Court declines plaintiff's invitation to do so here.

**E. Negligent Misrepresentation**

To hold P.F. Chang's liable for negligent misrepresentation, plaintiff "must show by clear, cogent, and convincing evidence that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information. In addition, the plaintiff must show that the false information was the proximate cause of the claimed damages." Baddeley v. Seek, 138 Wn. App. 333, 339-40 (2007) (internal citations omitted). Plaintiff does not identify any misrepresentation of fact, instead alleging that defendant failed to disclose the shortcomings in its cybersecurity system.

An omission is actionable only if there were a duty to disclose: in such instances, "the suppression of a material fact is tantamount to an affirmative misrepresentation." Alexander v. Sanford, 181 Wn. App. 135, 177 (2014) (citations omitted). In Washington, a duty to disclose arises:

> where there is a quasi-fiduciary relationship, where a special relationship of trust and confidence has been developed between the parties, where one party is relying upon the superior specialized knowledge and experience of the other, *where a seller has knowledge of a material fact not easily discoverable by the buyer*, and where there exists a statutory duty to disclose. On the other hand, the rule has always been that silence as to the material facts is not fraud where there is no duty

ORDER GRANTING MOTION TO DISMISS         -10-

to disclose.

Favors v. Matzke, 53 Wn. App. 789, 796 (1989) (emphasis added).  Plaintiff argues that P.F. Chang's was aware that its security protocols did not satisfy industry standards, that plaintiff was unaware of that fact, and that the information was material to plaintiff's decision to purchase meals at P.F. Chang's.  Complaint (Dkt. # 1) at ¶ 60.

        The allegation of materiality is entirely conclusory, and the Court will not presume that information regarding security protocols or lapses is material in this context.  Plaintiff does not allege facts suggesting that there is a public clamor to know what cybersecurity protocols each retailer is using or to be informed every time a retailer falls out of compliance with one or more of the published standards.  Recent disclosures of cybersecurity problems (such as those involving Target, Sony, and/or Home Depot) suggest that, while the breaches make headlines, they do not have much effect on consumer activities.  Plaintiff does not allege that he wants, much less would act upon, notification every time a retailer falls short on the cybersecurity front.  This omission is not merely an oversight:  common sense suggests that such notifications would quickly become overwhelming.  Most cardholders seem content to rely on notice of actual breaches combined with the protections offered by their credit card companies to safeguard their interests.  Plaintiff has not alleged facts giving rise to a plausible inference that the disclosure of data regarding compliance with certain cybersecurity standards would be material to his decision about whether to shop or dine with a particular retailer.

        With regards to damages, plaintiff alleges that, had he "known P.F. Chang's did not abide by industry-standard cybersecurity practices, he would have paid less for his meal or not eaten at P.F. Chang's at all."  Complaint (Dkt. # 1) at ¶ 4.  The first contention is implausible: restaurants do not negotiate the price of their menu items based on each customer's preferred method of payment or subjective valuation of the goods and services received.  There is no indication that plaintiff "overpaid" for security measures he did not get: customers pay the same price regardless of whether they pay with a credit card, debit card, check, or cash.  See In

ORDER GRANTING MOTION TO DISMISS    -11-

re: Target Corp. Customer Data Security Breach Litig., __ F. Supp.3d __, 2014 WL 7192478, at * 22 (D. Minn. Dec. 2,18, 2014).  To the extent plaintiff is arguing that, had he known of defendant's security lapses, he would have paid less than the menu price to account for the risk that his financial information would be stolen, the argument is implausible.

Plaintiff's assertion that he would have refrained from purchasing food at P.F. Chang's had he known that its security protocols were below industry standards tracks the language of other cases in which the damage allegations were deemed sufficient.  See In re Adobe Sys., Inc. Privacy Litig., __ F. Supp.3d __, 2014 WL 4379916, at *15-16 (N.D. Cal. Sept. 4, 2014); In re Toyota Motor Corp., 785 F. Supp.2d 883, 924 (C.D. Cal. 2011); Zwicker v. Gen. Motors Corp., 2007 WL 5309204, at * 5 (W.D. Wash. July 26, 2007).  For the reasons noted above, however, the Court will not presume that the disclosure of data regarding compliance with certain cybersecurity standards would have been material to plaintiff's decision about whether to shop or dine with a particular retailer.  In the absence of any factual allegations to support such an inference, the allegation is merely conclusory and will be ignored.  Plaintiff has therefore failed to raise a plausible inference that defendant can be held liable for negligent misrepresentation.[5]

---

[5] Defendant's "business transaction" and Rule 9(b) objections are unpersuasive.  The "business transaction" requirement does not mean that the transaction must be unpleasant, pursuant to a contract, or between corporate entities.  In this case, plaintiff was deciding where and when to purchase a good or service from a third party in the relevant market.  The Court sees no reason to exclude such activity from the definition of "business transaction" when evaluating a negligent misrepresentation claim.

Defendant acknowledges that negligent misrepresentation claims may be based on purely negligent, non-intentional statements, but argues that, because plaintiff has asserted a fraud-based claim in this action, his negligent misrepresentation claim must be evaluated under Rule 9(b).  Plaintiff has asserted a number of negligence-based claims that do not involve allegations of intent, however.  Those allegations serve as the factual basis for his negligent misrepresentation claim.  While the fraud-based claim involves an additional allegation of intent, it does not displace the alternative negligence-based theories stated elsewhere in the Complaint.   Because plaintiff has not relied on the same factual allegations for both the fraud and the negligence claims, the heightened pleading requirements of Rule 9(b) do not govern his negligence misrepresentation claim.

**F.  Arizona Deceptive Trade Practices Act**

P.F. Chang's is a Delaware corporation with its corporate headquarters in Scottsdale, Arizona.  Complaint (Dkt. # 1) at ¶ 5.  The Court declines to decide the territorial limits of the Arizona Deceptive Trade Practices Act and assumes, for purposes of this motion, that there are no substantive conflicts between the consumer protection laws of Arizona and Washington.  Nevertheless, the Deceptive Trade Practices Act claim fails for the reasons discussed above:  plaintiff has not identified an omission of material fact and has not alleged injuries proximately caused by the omission.

## CONCLUSION

For all of the foregoing reasons, P.F. Chang's motion to dismiss is GRANTED.  If plaintiff believes he can, consistent with his Rule 11 obligations, remedy the pleading and legal deficiencies identified above with regards to the negligence, implied contract, negligent misrepresentation, and/or consumer protection law claims, he may file an amended complaint within twenty-one days of the date of this order.  Because no set of facts could create a fiduciary relationship or give rise to strict liability in these circumstances, those claims are DISMISSED with prejudice.

Dated this 27th day of March, 2015.

*MWS Lasnik*
Robert S. Lasnik
United States District Judge